Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSHA HALBERSTAM, | Case No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| CRAFT BREW ALLIANCE, INC., DAVID R. LORD, TIMOTHY P. BOYLE, MARC J. CRAMER, PAUL D. DAVIS, MATTHEW E. GILBERTSON, KEVIN R. KELLY, NICKOLAS A. MILLS, and JACQUELINE S. WOODWARD, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Susha Halberstam ("Plaintiff"), by her undersigned attorneys, for her complaint against defendants, alleges upon personal knowledge with respect to

1
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Craft Brew Alliance, Inc. ("CBA" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which CBA will be acquired by Anheuser-Busch Companies, LLC, ("A-B"), through its wholly owned subsidiary Barrel Subsidiary, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On November 11, 2019, CBA and A-B issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated November 11, 2019 to sell CBA to A-B.  Under the terms of the Merger Agreement, each CBA stockholder will receive $16.50 in cash for each share of CBA common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $321 million.

3.      On January 21, 2020, CBA filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which

recommends that CBA stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the special committee of the Board's ("Committee") financial advisor Goldman Sachs & Co., LLC ("Goldman"); (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.   In short, unless remedied, CBA's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  CBA is incorporated in Washington and maintains its National Sales Office in Playa Del Rey, California.

## PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of CBA.

9.     Defendant CBA is a Washington corporation, with its principal executive offices located at 929 North Russell Street, Portland, OR 97227.  The Company was formed in 2008 with the merger of leading Pacific Northwest craft brewers Widmer Brothers Brewing and Redhook Ale Brewery, focusing on the preservation and growth of one-of-a-kind beer brands.  In 2010 the Company grew further with the addition of Kona Brewing Company ("Kona"), the largest craft brewery in Hawaii.  CBA's common stock trades on the NASDAQ Stock Market

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

under the ticker symbol "BREW."

10.     Defendant David R. Lord ("Lord") has been Chairman of the Board since January 2016 and a director of the Company since May 2003.

11.     Defendant Timothy P. Boyle ("Boyle") has been a director of the Company since July 1, 2008.

12.     Defendant Marc J. Cramer ("Cramer") has been a director of the Company since December 2010.

13.     Defendant Paul D. Davis ("Davis") has been a director of the Company since March 8, 2016.

14.     Defendant Matthew E. Gilbertson ("Gilbertson") has been a director of the Company since February 4, 2019.

15.     Defendant Kevin R. Kelly ("Kelly") has been a director of the Company since July 1, 2008.

16.     Defendant Nickolas A. Mills ("Mills") has been a director of the Company since January 1, 2017.

17.     Defendant Jacqueline S. Woodward ("Woodward") has been a director of the Company since May 2017.

18.     Defendants identified in paragraphs 10-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

19.    A-B is a Delaware limited liability company and a wholly owned subsidiary of A-B InBev, with principal executive offices located at One Busch Place, St. Louis, MO 63118.  A-B was organized in 2011 by statutory conversion of Anheuser-Busch Companies, Inc. into a limited liability company.   A-B was incorporated in 1979 as the holding company of Anheuser-Busch, Incorporated (now, Anheuser-Busch, LLC).    A-B owns and operates 23 breweries, 14 distributorships and 23 agricultural and packaging facilities, and has more than 18,000 colleagues across the United States.  A-B is home to several of America's most recognizable beer brands, including Budweiser, Bud Light, Michelob ULTRA and Stella Artois, as well as a number of regional brands.

20.    Merger Sub is a Washington corporation and a wholly owned subsidiary of A-B.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.    CBA is the seventh largest craft brewing company in the U.S. and a leader in brewing, branding, and bringing to market world-class American craft beers.  Its distinctive portfolio combines the power of Kona, one of the top craft beer brands in the world, with strong regional breweries and innovative lifestyle brands, including Appalachian Mountain Brewery, Cisco Brewers, Omission Brewing Co., Redhook Brewery, Square Mile Cider Co., Widmer Brothers Brewing, and

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Wynwood Brewing Co.  The Company nurtures the growth and development of its brands in today's increasingly competitive beer market through state-of-the-art brewing and distribution capability, integrated sales and marketing infrastructure, and strong focus on innovation, local community and sustainability.  The Company was formed in 2008 through the merger of Redhook Brewery and Widmer Brothers Brewing, the two largest craft brewing pioneers in the Northwest at the time. Following a successful strategic brewing and distribution partnership, Kona joined CBA in 2010.  As part of CBA, Kona has expanded its reach across all 50 U.S. states and approximately 30 countries, while remaining deeply rooted in its home of Hawaii.

22.    On August 7, 2019, the Company announced its second quarter 2019 financial results, including an 11% increase in Kona shipments which contributed to an overall 4.4% increase in total Company beer shipments.  Core beer sales increased 2.7% compared to the second quarter of 2018.  CBA Chief Executive Officer ("CEO") Andrew J. Thomas ("Thomas") commented on the quarter's financial results, stating:

> CBA's second quarter results reflect a tangible return on the strategic investments we've made to fuel Kona's momentum, realize the full value of our newly acquired brands, and unlock our future potential. In a down market, we accelerated Kona to 8% depletions growth, returned

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

our total portfolio to net positive, and delivered record gross margin –

all while doubling down on our future growth prospects to drive

shareholder value.

23.   On November 12, 2019, CBA announced its third quarter 2019

financial results, including Kona growth depletions of 7% for the quarter and 6% for

the first nine months, which continued to outperform the craft segment and beer

category overall.  Reflecting on the quarter's financial results, the Company's CEO

Thomas stated:

CBA's third quarter depletions growth, fueled by Kona, is remarkable

on a number of levels -- in absolute terms, in contrast to the market

overall, and notwithstanding its absolute size already as a top 10

national craft brand. Moreover, within the Kona family, it's clear that

Big Wave is just getting started.

**The Proposed Transaction**

24.   On November 11, 2019, CBA and A-B issued a joint press release

announcing the Proposed Transaction.  The press release states, in relevant part:

NEW YORK & PORTLAND, Ore.--(BUSINESS WIRE)--Nov. 11,

2019-- Today, Craft Brew Alliance ("CBA") (Nasdaq: BREW), a

Portland-based brewing company that creates world-class craft beers,

and Anheuser-Busch ("A-B") jointly announced an agreement to

8

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

expand their partnership, with A-B agreeing to purchase the remaining CBA shares it does not already own in a merger transaction for $16.50 per share, in cash.

"Today's announcement represents an exciting next step in a long and successful partnership with Anheuser-Busch, whose support for the growth of our business and brands traces back over 25 years," said Andy Thomas, CEO of CBA. "By combining our resources, our talented teammates, and dynamic brands, we will look to nurture the growth of CBA's existing portfolio as we continue investing in innovation to meet the changing needs of today's beverage consumers, all while delivering certainty of value to our shareholders."

The vast majority of CBA's brands are already distributed through A-B's network of independent wholesalers per the companies' existing commercial agreement.

"Anheuser-Busch has a long track record of working with its craft partners to help make the U.S. beer category stronger and more vibrant," said Michel Doukeris, CEO of Anheuser-Busch. "Our

9

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

partnership with CBA goes back many years and we look forward to supporting CBA as they continue to bring great products to beer drinkers across the U.S."

CBA would join A-B's high-performing Brewers Collective – a collection of craft partners spread throughout the country committed to providing consumers with innovative, quality beers and investing in their local communities. In the last three years alone, A-B has invested more than $130 million in its craft partners, allowing them to expand their production volume by an average of 31 percent. A-B's craft partners have created nearly 1,000 new jobs in their home communities to support their growing breweries.

"The beer industry in the U.S. is competitive and dynamic, with more choices available to consumers than ever before," said Marcelo "Mika" Michaelis, president, Brewers Collective, Anheuser-Busch. "CBA's diverse portfolio of regional breweries and innovative lifestyle brands is an excellent complement to our family of craft partners and would continue to help fuel the growth of the craft beer category."

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

A-B currently owns a 31.2 percent stake in CBA and has offered $16.50 in cash for the remaining shares.

The transaction is subject to customary closing conditions, including approval by a majority of CBA's shareholders not affiliated with A-B and certain regulatory approvals. The transaction is expected to close in 2020.

**The Proxy Statement Contains Material Misstatements or Omissions**

25.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to CBA's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

26.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Committee's financial advisor, Goldman; (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

***Material Omissions Concerning the Company's Financial Projections and Goldman's Financial Analyses***

27.     The Proxy Statement omits material information regarding Company management's financial projections .

28.     For example, the Proxy Statement fails to disclose the following metrics over the projection period: (i) Adjusted EBITDA; (ii) total gross profit; (iii) operating income; (iv) net operating profit after tax; (v) depreciation and amortization; (vi) changes in net working capital; and (vii) capital expenditures.

29.     Additionally, the Proxy Statement omits material information regarding Goldman's financial analyses.

30.     The Proxy Statement describes Goldman's fairness opinion and the various valuation analyses it performed in support of its opinion.  However, the description of Goldman's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, CBA's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

31.     With respect to Goldman's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the estimate of the terminal year unlevered free cash flow of CBA; (ii) estimated terminal year Adjusted EBITDA; (iii) quantification of

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

the inputs and assumptions underlying the discount rates ranging from 6.0% to 7.0%; (iv) CBA's net debt as of October 31, 2019; and (v) the fully diluted CBA common stock outstanding as of November 8, 2019.

32.    With respect to Goldman's Illustrative Present Value of Future Share Price Analysis, the Proxy Statement fails to disclose: (i) CBA's NTM EBITDA for each of years 2019, 2020 and 2021; (ii) the Company's estimated net debt as of December 31, 2019, 2020 and 2021; and (iii) the Company's estimated fully-diluted common stock outstanding as of December 31, 2019, 2020 and 2021.

33.    With respect to Goldman's *Selected Precedent Transactions Analysis,* the Proxy Statement fails to disclose: (i) CBA's net debt as of October 31, 2019; and (ii) the fully diluted CBA common stock outstanding as of November 8, 2019.

34.    Without such undisclosed information, CBA stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

35.    The omission of this material information renders the statements in the

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

"Opinion of Goldman Sachs & Co. LLC" and "Unaudited Prospective Financial Information of CBA" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

36.     The Proxy Statement omits material information concerning the background process leading to the Proposed Transaction.

37.     For example, the Proxy Statement sets forth that on September 24, 2019, CBA and A-B representatives discussed, among other things, an appropriate valuation for the Company and "the A-B representatives believed that an appropriate valuation for CBA would be $15 in cash per share of CBA common stock."  Proxy Statement at 19.  In response, CBA representatives "discussed some reasons and bases for a higher valuation."  *Id.* at 20.

38.     Similarly, on September 26, 2019, CBA representatives "continued to view a price of $15 in cash per share as insufficient for CBA shareholders, discussed some reasons and bases for a higher valuation, and indicated that a price of at least $18 per share would likely be a value that CBA's senior management team would be prepared to recommend to the Committee."  *Id.*  Yet, the Proxy Statement fails to disclose CBA's reasons and bases for a higher valuation of the Company discussed at each of the September 24 and September 26, 2019 meetings.

39.     At an October 4, 2019 Committee meeting, the Proxy Statement states:

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

[I]t was the consensus of the Committee that a proposal in the [$15] range being indicated by A-B could potentially be highly attractive to CBA and its shareholders relative to the alternative of remaining independent and continuing to execute on its business plan with no change to its relationship with A-B and relative to CBA's other strategic alternatives. . . .

*Id.* at 21. The Proxy Statement, however, fails to disclose "CBA's other strategic alternatives" and the details of the Committee's discussion resulting in its view that an approximate $15 per share valuation of the Company was appropriate, when approximately one week earlier, the Committee had determined *$18 per share* was an appropriate valuation of the Company.

40.     The omission of this material information renders the statements in the "Background of the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Company Insiders' Potential Conflicts of Interest**

41.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by CBA insiders.

42.     The Proxy Statement fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between A-B and CBA's executive officers and directors, including who

15

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of A-B's proposals or indications of interest mentioned management retention, consulting arrangements or equity participation in the combined company.

43.    Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders.   This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44.    The omission of this material information renders the statements in the "Background of the Merger" and "Interests of Executive Officers and Directors of the Company in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

45.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of CBA will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### Count I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

46.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.    During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the financial analyses performed by the Committee's financial advisor, the background of the Proposed Transaction, and potential conflicts of interest faced by Company insiders.  The defendants were at least negligent in filing the Proxy Statement with these materially

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

false and misleading statements.

49.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in making a voting or appraisal decision on the Proposed Transaction.

50.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

51.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

<u>**COUNT II**</u>

**Claims Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of CBA within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CBA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

54.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

56.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

58.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, CBA's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of CBA, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

1

## **JURY DEMAND**

2

Plaintiff demands a trial by jury on all claims and issues so triable.

3

4

5 Dated: February 7, 2020            **WEISSLAW LLP**

6

7              By:

8                    Joel E. Elkins

9                    9107 Wilshire Blvd., Suite 450

                    Beverly Hills, CA 90210

10                    Telephone: 310/208-2800

11                    Facsimile: 310/209-2348

                            -and-

12                    Richard A. Acocelli

13                    1500 Broadway, 16th Floor

                    New York, NY  10036

14                    Telephone: 212/682-3025

15                    Facsimile:  212/682-3010

16                    *Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

21
COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS